Appeal No. 16-1823

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
—————————————————————

**Cablz, Inc.**

*Respondent-Appellant*,

v.

**Chums, Inc. and Croakies, Inc.,**

*Petitioner-Appellees*.

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK
OFFICE, PATENT TRIAL AND APPEAL BOARD, NO. IPR2014-01240

**BRIEF OF APPELLEES**

Marc T. Rasich
Joshua G. Gigger
Daniel C. Higgs
STOEL RIVES LLP
201 South Main Street
Suite 1100
Salt Lake City, UT 84111
(O) 801-328-3131

Hunter O. Ferguson
STOEL RIVES LLP
600 University Street
Suite 3600
Seattle, WA 98101-3197
(O) 206-386-7514

*Attorneys for Petitioners-Appellees Chums, Inc. and Croakies, Inc.*

## CERTIFICATE OF INTEREST

Counsel for the appellees certify the following:

1. The full name of every party represented by counsel is Chums, Inc. and Croakies, Inc.

2. The parties represented by counsel are the real parties in interest.

3. Neither party represented by counsel has a parent corporation and no publicly held company owns 10 percent or more of the stock of either party represented by counsel.

4. The law firms of Stoel Rives LLP, Renaissance IP Law Group, and the Law Office of Andrew D. Maslow, and attorneys Daniel C. Higgs, Kevin B. Laurence, and Andrew D. Maslow appeared for Chums, Inc. and Croakies, Inc. before the United States Patent and Trademark Office Patent Trial and Appeal Board.

5. The following attorneys will be appearing for Chums, Inc. and Croakies, Inc. in this appeal: Marc T. Rasich, Joshua G. Gigger, Hunter O. Ferguson, Daniel C. Higgs, and Andrew D. Maslow.

89938017.6 0052018-00009

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................iv

I.     STATEMENT OF RELATED CASES...............................1

II.    ORAL ARGUMENT STATEMENT.................................1

III.   STATEMENT OF THE CASE ..........................................1

IV.   STATEMENT OF THE ISSUES ....................................10

V.    SUMMARY OF THE ARGUMENT ................................10

VI.   ARGUMENT...................................................................12

      A.    The Board's Finding that the Prior Art Teaches Resiliency Should be Affirmed ..........................................13

            1.    Cablz Waived its Argument that Chums Failed to Establish that the Prior Art Teaches Resiliency ....................14

            2.    The Board's Finding that Monroe Teaches the Resilient Limitation is Supported by Substantial Evidence....................19

      B.    Substantial Evidence Supports the Board's Motivation to Combine Finding ..........................................22

            1.    Evidence of Motivation to Combine the Teachings of Monroe and Mackay .................................................25

            2.    Evidence of Motivation to Combine the Teachings of Chisolm and Monroe.................................................28

            3.    Evidence of motivation to combine the teachings of Miller with either of the Monroe/Mackay or Chisolm/Monroe combinations.................................31

      C.    The Board Adequately Explained its Motivation to Combine Findings by Crediting Chums' Arguments and Rejecting Cablz's Arguments ..........................................34

            1.    Basis for Motivation to Combine the Teachings of Monroe and Mackay .................................................36

            2.    Basis for Motivation to Combine the Teachings of Chisolm and Monroe.................................................40

89938017.6 0052018-00009

3.      Basis for Motivation to Combine the Teachings of Miller
        with Either of the Monroe/Mackay or Chisolm/Monroe
        Combinations ..........................................................................42

VII.   CONCLUSION.............................................................................45

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Altana Pharma AG v. Teva Pharm. USA, Inc.*,
  566 F.3d 999 (Fed. Cir. 2009) ....................................................................23

*Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*,
  419 U.S. 281 (1974)......................................................................................35

*CBS Interactive Inc. v. Helferich Patent Licensing, LLC*,
  IPR2013-00033, Paper 118........................................................................14, 15

*Consol. Edison Co. of N.Y. v. NLRB*,
  305 U.S. 197 (1938)......................................................................................13

*In re Cuozzo Speed Techs., LLC*,
  793 F.3d 1268 (Fed. Cir. 2015), *aff'd*, 136 S. Ct. 2131 (2016)..........................13

*Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*,
  597 F.3d 1374 (Fed. Cir. 2010) ...............................................................18, 19

*DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*,
  695 F.3d 1247 (Fed. Cir. 2012) ......................................................................13

*Forshey v. Principi*,
  284 F.3d 1335 (Fed. Cir. 2002), *superseded by statute on other
  grounds* .......................................................................................................16

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007)..............................................................................11, 22, 24

*In re Magnum Oil Tools Int'l, Ltd.*,
  829 F.3d 1364 (Fed. Cir. 2016) ......................................................................12

*In re NuVasive, Inc.*,
  841 F.3d 966 (Fed. Cir. 2016) .......................................................................20

*In re Nuvasive, Inc.*,
  No. 2015-1670, 2016 WL 7118526 (Fed. Cir. Dec. 7, 2016) ....................15, 35

*Perfect Web Techs., Inc. v. InfoUSA, Inc.*,
  587 F.3d 1324 (Fed. Cir. 2009) ...........................................................13, 23, 35

*Pfizer, Inc. v. Lee*,
  811 F.3d 466 (Fed. Cir. 2016) ...........................................................16

*Redline Detection, LLC v. Star Envirotech, Inc.*,
  811 F.3d 435 (Fed. Cir. 2015) ...........................................................15

*In re Schreiber*,
  128 F.3d 1473 (Fed. Cir. 1997) ...........................................................16

*In re Watts*,
  354 F.3d 1362 (Fed. Cir. 2004) ...........................................................15, 16

## Statutes

35 U.S.C. § 103 ...........................................................9, 11, 12, 34

35 U.S.C. § 103(a) ...........................................................36, 40, 43

## Rules

Federal Circuit Rule 47.5 ...........................................................1

Federal Rule of Appellate Procedure 30(a)(2) ...........................................................15

## Regulations

77 Fed. Reg. 48756, 48768 (Aug. 14, 2012) ...........................................................14

89938017.6 0052018-00009

# I.  STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, the following cases will directly be affected by this Court's decision in the present appeal:

1.  *Cablz, Inc. v. Chums, Inc.*, 2:14-cv-00091-SLB (N.D. Ala.).

2.  *Cablz, Inc. v. Croakies, Inc.*, 2:14-cv-00126-SGC (N.D. Ala.).

# II.  ORAL ARGUMENT STATEMENT

Chums, Inc. and Croakies, Inc. (collectively, Chums) respectfully request oral argument to further address the important issues in this appeal.

# III.  STATEMENT OF THE CASE

This case exemplifies the need for *inter partes* review (IPR) proceedings as an efficient means for invalidating patents that would not have issued if the U.S. Patent and Trademark Office (USPTO) had an opportunity to consider all relevant prior art during prosecution.  Eyewear retainers comprised of a resilient cable that extends rearward from the head while staying off-the-neck have been made and used for decades before Cablz, Inc. (Cablz) sought a patent containing that alleged invention, but those pre-existing retainers were not considered by the USPTO because they had not previously been the subject of a patent application.  If the USPTO considered the eyewear retainer disclosed in the Monroe[1] reference, it would have found significant motivation to combine Monroe with other prior art

---

[1] Monroe refers to a newspaper article published in *The Oregonian* on July 4, 1991, titled "Outdoor folks don't use trendy glasses-holders."  *See* Appx0412-Appx0416.

references discussing the advantage of including a "temple retainer" on the ends of the eyewear retainer so that the user can easily attach the eyewear retainer to his or her glasses. The USPTO did not have an opportunity to consider the Monroe reference, however, and Cablz received U.S. Patent No. 8,366,268 (the '268 Patent), then later sued Croakies and Chums for allegedly infringing it.

The '268 Patent "relates to eyewear retainers that extend around the rear of a wearer's head and upper neck." Appx0046, col. 1, ll. 7-8. The '268 Patent alleged that prior art eyewear retainers had many flaws, including potential ensnarement in the collar and/or buttons of the wearer's vestment, and coating of the eyewear retainers with "sweat, suntan lotion, protective emollients, and other types of debris," which could make the devices unsightly and unattractive and cause corrosion, diminished retention effectiveness, discoloration, and fading. Appx0046, col. 1, ll. 51-67. The '268 Patent allegedly fixed these problems by disclosing an eyewear retainer that includes a cable and temple retainers at each end of the cable that "does not contact a wearer's back or collar, or other vestment worn by a user, but instead maintains a spaced position extending backwards from the user," as shown in figure 4 (reproduced below). Appx0046, col. 2, ll. 48-67; Appx0047, col. 3, ll. 1-34, 57-67, col. 4, ll. 1-9.



*FIG. 4 of the '268 Patent*
(Appx0044)

Chums was aware that others had made and used eyewear retainers including a resilient cable for decades and, therefore, filed a Petition for IPR so that the USPTO could consider all of the prior art for the first time. In the Petition, Chums asserted six grounds of invalidity. Trial was instituted on the first four grounds, in which Chums argued that the alleged invention was obvious in view of four prior art references: (1) Monroe, (2) Mackay,[2] (3) Chisolm,[3] and (4) Miller.[4] Appx0058-Appx0059.

---

[2] U.S. Patent No. 6,941,619 issued to Mackay et al. on September 13, 2005. Appx0417-Appx0427.

[3] U.S. Patent No. 6,764,177 issued to Chisolm on July 20, 2004. Appx0444-Appx0452.

[4] U.S. Patent Application Publication No. 2007/0046889 to Miller et al., published on March 1, 2007. Appx0428-Appx0443.

- 3 -

Monroe, which was not considered during prosecution of the '268 Patent, teaches a retainer that "extends rearward from the head of the wearer." *See* Appx0046 (showing Monroe is absent from the "References Cited" list for the '268 Patent). Monroe chronicles the eyewear retainers used by fishermen 15 years before the filing date of the '268 Patent. Appx0412; Appx2513. Most importantly, it discusses an eyewear retainer made and used by Mark Sosin (Sosin), which includes a resilient cable comprised of "300-pound test monofilament so thick and stiff that the only knot it would take would be big enough to tie up a small ship." Appx0046. Sosin attached this resilient cable to his glasses by wrapping dental floss around the resilient cable and the eyewear's temple bars, and finishing it off with a fishing knot. Appx0046. Sosin explained that he invented this eyewear retainer *because he wanted an eyewear retainer that would stay off his neck*. Appx0046. Monroe shows that Sosin accomplished this goal, observing that Sosin's retainer "sticks straight out behind his head at all times the glasses are worn." Appx0046. A picture of Sosin's retainer from the Monroe reference is reproduced below.

- 4 -



*Monroe, Photograph of Mark Sosin with Eyewear Retainer.* (Appx0413)

Sosin repeatedly confirmed during his deposition in underlying patent infringement litigation that his eyewear retainer was resilient in that it would return to the original off-the-neck position if it was pushed or bent down for any reason. *See* Appx0987; Appx1034; Appx1107; Appx1211. Indeed, Cablz admitted the resilient nature of the Sosin retainer numerous times in its briefing during the IPR.

Mackay and Chisolm (among other prior art references) illustrate how common it was in the industry to attach rubber temple retainers to the ends of the eyewear retainer to facilitate easy attachment of the eyewear retainer to the user's glasses. Mackay specifically teaches an eyewear retainer that includes two temple retainers attached to the ends of a variety of different cords. The temple retainers

- 5 -

of Mackay are capable of "selectively coupl[ing] to different portions of an eyeglass," as demonstrated in the figures below. Appx0423. Thus, the retainers can be secured at different positions along the frame of the glasses to suit the wearer. Mackay specifically contemplates that the cord could be made of "a variety of different materials [including] a wire, a chain, a rope, a string, [or] an elongate elastomeric member." Appx0425.



FIG. 2A of Mackay (annotated)    FIG. 2B of Mackay
        (Appx0420)                    (Appx0421)

Among those temple retainers disclosed by Chisolm are temple retainers that normalize the direction of a cord rearward from the wearer's head by, for example, using multiple openings for insertion of the temple bar. Appx0444. More specifically, the temple retainers in Chisolm can be attached in a "variety of ways" to glasses, as illustrated in figures 6, 8, 9, and 10 reproduced below.

- 6 -



*FIGS. 6 and 8-10 of Chisolm* (Appx0448-Appx0449)

In one configuration of the Chisolm temple retainers, the glass frames are inserted into the temple retainer openings as shown in figure 12 below. If the temple retainers are then placed on the frames in a position similar to figure 8 above, the temple retainer will include an angle that forces the cord rearward from the wearer's head in response to the curved end portion of the glasses. Chisolm, like Mackay, indicates that the "filament member" to which the temple retainers are attached "may be made of any suitable material, including metals, fabrics, woven or non-woven cord, plastics or elastomers." Appx0450.



*FIG. 12 of Chisolm* (Appx0449, annotated)

The fourth prior art reference, Miller, shows that resilient plastic (such as monofilament), other resilient cables having a metallic core (such as coaxial cable), and more flexible eyewear retainer materials (such as rope) can be substituted based on the intended characteristics for the temple retainer.  In fact, Miller expressly teaches that monofilament can be replaced by a cable "made from a metallic core coated in a smooth casing" (such as coaxial cable), the same type of cable that Cablz recites in claims 2 and 10 of the '268 Patent.  Appx0440.

Chums' Petition illustrated how the eyewear retainer claimed in the '268 Patent was an obvious combination of the teachings of the above prior art, and how the references themselves provide explicit motivation for each combination.  The USPTO Patent Trial and Appeal Board (the Board) agreed and instituted review of all 17 claims of the '268 Patent as of February 10, 2015.  Appx0183.  In the order instituting review, the Board construed the claim limitation resilient to mean

- 8 -

"having sufficient stiffness to maintain its shape and to return to its original form after being bent."  Appx0188.

In its response brief, Cablz admitted numberous times that the Sosin eyewear retainer disclosed in Monroe included a resilient member.  *See infra* page 17-18 (listing concessions).  At oral argument, however, Cablz flipped its position and argued for the first time that Chums did not meet its burden of proof that Monroe taught the use of a resilient cable or member.  Appx0349.

Despite Cablz's flip-flop, the Board found Chums' arguments persuasive and invalidated the '268 Patent as obvious.  Appx0001-Appx0036.  In its decision, the Board found that a combination of Monroe, Mackay, Miller, and Chisolm taught each limitation of the '268 Patent claims, and that there was substantial evidence supporting Chums' motivation to combine arguments.  Appx0013-Appx0019.  Specifically, in a section titled "*Asserted Grounds of Unpatentability under 35 U.S.C. § 103*" the Board found Chums'  motivation to combine arguments persuasive, and then in a section titled "*Reasons to combine the prior art,*" the Board explained why it did not find persuasive Cablz's counter-arguments regarding the alleged lack of a motivation to combine.

Finally, the Board "determined that Petitioner's strong evidence of obviousness of claims 1-17 . . . established by a preponderance of evidence that

claims 1-17 are unpatentable under the asserted grounds." *See* Appx0032. This

appeal followed.

## IV.  STATEMENT OF THE ISSUES

1.   Should this Court affirm the Board's finding that Monroe teaches resiliency
     where:

     A.    Cablz repeatedly conceded in briefing and did not contest that Monroe
           taught resiliency until it was too late, at oral argument before the
           Board?

     B.    Chums submitted substantial evidence supporting the Board's finding
           that Monroe taught resilience including Cablz's own repeated
           admissions, declaration evidence, and deposition testimony?

2.   Is there substantial evidence to support the Board's finding that Chums
     established motivation to combine teachings of the prior art where Chums
     identified: (i) express motivations for combining the references within the
     prior art itself; (ii) rationales for combining references; and (iii) supported
     those rationales with uncontested declaration evidence?

3.   Does the Board's decision provide a reasonably discernible path to support
     its finding on motivation to combine where it repeatedly positively cited
     Chums' arguments and evidence and repeatedly discounted Cablz's contrary
     arguments?

## V.  SUMMARY OF THE ARGUMENT

This Court should affirm the Board's order that Cablz's simple, off-the-neck

eyewear retainer as claimed in the '268 Patent was obvious at the time of

patenting.  The Board correctly concluded that the prior art references under

consideration teach every element of the claims, including the resiliency limitation,

and also contain ample motivation to combine their teachings.  Cablz waived any

- 10 -

argument regarding the alleged lack of proof of the resilient limitation because it waited to raise the argument for the first time until the oral argument before the Board.  What is worse, Cablz flip-flopped its position after admitting on several occasions that Monroe did meet the resilient limitation of the ‘268 Patent. Regardless, substantial evidence establishes that the Monroe reference does teach resiliency, including the declaration testimony of expert Steven Visser and the deposition testimony of Sosin.

Chums also presented substantial evidence of motivation to combine the teachings of the prior art.  Among other things, Chums identified express motivations for combination within the prior art itself,  identified other rationales consistent with *KSR*, and provided declarations and other evidence in support of those rationales.  The Board's final decision confirmed that it considered and was persuaded by all of this evidence in finding a motivation to combine the prior art.

The Board also articulated its findings regarding motivation to combine the teachings of the prior art.  The Board both summarized and identified with specificity in a section titled "*Asserted Grounds of Unpatentability under 35 U.S.C. § 103*" Chums' arguments regarding motivation to combine when it discussed the Monroe, Mackay, Miller, and Chisolm references, which it determined provided "strong evidence of obviousness."  It then dedicated an additional section of its findings, titled "*Reasons to combine the prior art,*" to

- 11 -

analyze and reject Cablz's arguments against motivation to combine and affirm that Chums' arguments on each issue were more persuasive. Accordingly, the Board provided a discernible path to support its finding on motivation to combine.

Because the Board's decision is free of the flaws alleged by Cablz, this Court should affirm the Board's finding that claims 1-17 of the '268 Patent are invalid.

## VI. ARGUMENT

The Board's decision to invalidate claims 1-17 of the '268 Patent as obvious under 35 U.S.C. § 103 should be affirmed. Under 35 U.S.C. § 103, a patent is invalid if it would have been obvious to a person of ordinary skill in the art (POSITA) based on the prior art. When making an obviousness determination, the Board is required to analyze the three *Graham* factors: (1) the scope and content of the prior art; (2) differences between the prior art and the claims at issue; and (3) the level of ordinary skill in the art. Here, the Board analyzed all three factors and found by a preponderance of evidence that the '268 Patent would have been obvious to a POSITA based on the combined teachings of four prior art references. *See* Appx0017. This Court reviews the conclusion of obviousness *de novo*. *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1373 (Fed. Cir. 2016). But the Board's underlying factual findings, such as "[w]hat a reference teaches" and whether there was a motivation to combine, are reviewed for substantial evidence.

*In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1280 (Fed. Cir. 2015), *aff'd*, 136 S. Ct. 2131 (2016); *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1327 (Fed. Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938). "The substantial evidence standard demands deference to the Board." *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1252 (Fed. Cir. 2012). Because the Board did not err under this deferential standard, its decision should be upheld.

## A.    The Board's Finding that the Prior Art Teaches Resiliency Should be Affirmed.

Cablz argues that there is no evidence in the record that either Monroe or Miller[5] teaches the resilience limitation, as construed by the Board. But Cablz waived this argument by failing to raise it below until the oral argument before the Board. Even then, it did so despite previous repeated admissions that Monroe does teach resiliency. Regardless, there is substantial evidence supporting the Board's conclusion. Thus, the Board's finding that Monroe teaches resiliency should be affirmed.

---

[5] Chums disagrees with Cablz's characterizations and discussion of Miller in its brief. Because it is not necessary to address Miller-specific inaccuracies to expose the fatal flaws in Cablz's arguments, however, Chums does not address them here but reserves the right to do so should this Court deem it necessary.

1.      **Cablz Waived its Argument that Chums Failed to Establish that the Prior Art Teaches Resiliency.**

Cablz asserts that the Board made unwarranted assumptions and inferences to conclude that Monroe teaches the resilient limitation.  Appellant's Br. at 21-22.  But Cablz should not be permitted to challenge the Board's alleged failure to adequately address this issue because (i) Cablz did not properly present it to the Board and (ii) it contradicts the express admissions Cablz made during briefing.

The Board adheres to the procedural framework set forth in the Patent Trial Practice Guide when conducting IPR proceedings.  *See CBS Interactive Inc. v. Helferich Patent Licensing, LLC,* IPR2013-00033, Paper 118, pp. 2-3.  In a section pertaining to oral arguments captioned "*No new evidence and arguments,*" the Patent Trial Practice Guide states:  "A party . . . may only present arguments relied upon in the papers previously submitted.  No new evidence or arguments may be presented at the oral argument."  77 Fed. Reg. 48756, 48768 (Aug. 14, 2012) (emphasis added).  The Board has explained that its trials are not like those in district courts and, thus, all arguments and evidence must be presented in writing before oral argument:

> Unlike trials conducted in district courts, a trial before the Board is conducted on paper.  By the time the proceeding reaches final oral hearing, nothing new can be presented, no new evidence, no new arguments.  *Patent Trial Practice Guide*, 77, Fed. Reg. 48756, 48768 (Aug. 14, 2012).  At that stage, the trial is already completed, and the final oral hearing is not an opportunity to add anything to a party's

- 14 -

case.  Whatever a party desires to present, for whatever reason, should have already been presented in the party's petition, response, opposition, motion, reply, declarations, observations on cross-examination, or other exhibits presented at an appropriate time during the trial.

*CBS Interactive Inc. v. Helferich Patent Licensing, LLC*, IPR2013-00033, Paper 118, pp. 2-3.  The Board warned Cablz of these procedures in a scheduling order, cautioning that "any arguments for patentability not raised and fully briefed in the response will be deemed waived."[6]  This Court recently relied on a scheduling order containing identical language as proof that the Board "had warned" the patent owner about IPR procedures, and thus held that any arguments advanced on appeal but omitted from the response below were waived.  *In re Nuvasive, Inc.*, No. 2015-1670, 2016 WL 7118526, at *3 (Fed. Cir. Dec. 7, 2016).

Likewise, this Court frequently refuses to address issues that are not first adequately presented to the Board.  *See, e.g., In re Watts*, 354 F.3d 1362, 1366-68 (Fed. Cir. 2004); *see also Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 450 (Fed. Cir. 2015) (holding that argument for a different POSITA standard was waived where patent owner argued before Board that the petitioner's

---

[6] This scheduling order does not appear in the joint appendix.  Concurrent with this brief, Chums has filed a motion for leave to submit this Scheduling Order in a supplemental appendix.  This Court may rely on the scheduling order even without granting the Motion under Federal Rule of Appellate Procedure 30(a)(2), which provides that "[p]arts of the record may be relied on by the court or the parties even though not included in the appendix."

POSITA definition was wrong but did not present an alternative until briefing on appeal).  Generally, if an issue is not raised sufficiently for the lower tribunal to address it, this Court will find the issue waived.  *See Watts*, 354 F.3d at 1366-68. *Contra Pfizer, Inc. v. Lee*, 811 F.3d 466, 471 (Fed. Cir. 2016) (finding issue not waived where it was raised in briefing and at oral argument and the district court had addressed it).  To illustrate, in *Watts*, this Court held that a new argument regarding the teachings of a prior art patent was waived on appeal because it was not presented below.  *Watts*, 354 F.3d at 1366-68.  There, the patent owner advanced one interpretation of the prior art before the Board, but on appeal switched its position and adopted an interpretation that contradicted its original position.  *Id.* at 1367.  After noting that "[t]he Board is an expert body that plays an important role in reviewing the rejection of patent applications," this Court declined to address the patent owner's new interpretation because it did "not have the benefit of the Board's informed judgment on this issue for our review."  *Id.* at 1367-68; *see also In re Schreiber*, 128 F.3d 1473, 1479 (Fed. Cir. 1997).[7]

---

[7] There are a few, limited exceptions to the waiver doctrine such as, for example, if the argument could not have been raised below due to an intervening change in law or fact.  *See Forshey v. Principi*, 284 F.3d 1335, 1357 (Fed. Cir. 2002), *superseded by statute on other grounds*. None of these exceptions, however, excuses Cablz's failure to timely raise the resiliency issue, nor has Cablz argued that an exception applies.

This Court likewise should decline to consider Cablz's arguments regarding the teachings of Monroe and Miller, which it did not properly present to the Board before oral argument.

Cablz's effort to raise its resiliency claim for the first time at oral argument is made worse by the fact that Cablz repeatedly *admitted* that Monroe teaches the resilient limitation in its briefing. After the Board construed the term resilient, Cablz repeatedly confirmed that Monroe teaches the resilient limitation, stating:

1. "A POSITA would not use Chisolm's slider with Monroe's heavy, thick, stiff and stout line *or any other resilient cable*." Appx0250 (emphasis added).

2. "Monroe discloses a *resilient member*, but not a cable." Appx0258 (emphasis added).

3. "[T]he slider in MacKay and Chisolm teaches away from using a *resilient member of Monroe* or the resilient cable in '268 Patent because the slider's two chambers in close proximity need a highly flexible cord." Appx0261 (emphasis added).

4. "Monroe's [sic: Mackay's] flexible temple retainers with readily bendable accordion-like ends teach away from keeping the *resilient member of Monroe* off the neck." Appx0261 (emphasis added).

- 17 -

5. "Miller teaches away from using the *resilient member of Monroe* because Miller requires a flexible temple element put into tension by a counterweight to pull the frame against the face." Appx0262 (emphasis added).

Only at the final oral hearing—when it was no longer possible for Chums to augment the record—did Cablz reverse course and present its new argument that the prior art fails to teach the resilient limitation.[8]

This Court has not hesitated to refuse to consider issues on appeal in similar circumstances. *See Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1383 (Fed. Cir. 2010). In *Delaware Valley*, for example, the patentee conceded in its briefing to the district court that the subject invention was ready for patenting at the time of an offer to sell, but contested the issue on appeal, arguing that there was no evidence that the invention was ready for patenting at that time of offer. *Id.* When questioned why it had not waived this new argument, the patentee responded that even though it had not briefed the argument below, it had nevertheless raised it at oral argument. *Id.* This Court declined to let the patentee change its position on appeal and held that the patentee waived its ready-for-patenting argument. *Id.* In doing so, this Court noted that the patentee affirmatively testified that the invention was ready for patenting before the district

---

[8] Chums timely objected to Cablz's presentation of this new argument during the oral hearing. Appx0404.

court, and thus the patentee should not be allowed to withdraw its admission and change course on appeal. *See id.*

Here, Cablz waived its argument that the prior art fails to teach the resilient limitation by failing to timely raise the argument, particularly where Cablz repeatedly conceded that Monroe teaches this limitation, effectively preventing Chums and the Board from thoroughly addressing the issue. But, as discussed below, even with Cablz's procedural gamesmanship, Chums still established, and the Board correctly concluded, that Monroe teaches the resilient limitation.

### 2. The Board's Finding that Monroe Teaches the Resilient Limitation is Supported by Substantial Evidence.

To the extent this Court entertains Cablz's argument that Chums failed to offer evidence that the prior art references met the resilience limitation, the Court should reject it in light of the substantial evidence supporting the Board's resiliency finding. Cablz asserts that the "only evidence from which the Board could have drawn its conclusion" that Monroe teaches a resilient member is "[t]he conclusory and unspecific testimony of Visser on this issue." Appellant's Br. at 23. Cablz is wrong. First, despite Cablz's attempts to dismiss Visser's declaration, the declaration is sufficient to establish that Monroe teaches the resilient limitation. Second, the Visser declaration is not the only evidence on this point. Additional evidence includes Cablz's own repeated admissions and the deposition of Sosin,

taken during concurrent litigation and entered as evidence in the IPR, both of which support the finding that Monroe teaches the resilient limitation.

The Visser declaration is sufficient to prove that Monroe teaches the resilient limitation. *See In re NuVasive, Inc*., 841 F.3d 966, 973 (Fed. Cir. 2016) (holding that prior art reference and argument alone were sufficient evidence to support the Board's conclusion that the prior art taught a limitation at issue). Visser's statement reads: "Based on the description of monofilament in Monroe, I conclude the monofilament in Sosin's eyewear retainer is an elongated piece of resilient plastic." Appx0474 at ¶ 30. Cablz never challenged this assertion in its response or in any other filing below. Cablz also chose not to depose Visser or make any other affirmative effort to discredit this assertion. *See* Appx0025. Accordingly, Cablz acquiesced to it. Indeed, not only did Cablz implicitly agree with Visser's allegedly conclusory statement by failing to challenge it, Cablz explicitly agreed with Visser's statement by adopting Visser's conclusion as its own on multiple occasions. *See supra* page 22-23. That is, like Visser, Cablz concluded, and repeatedly stated, that Monroe teaches a resilient member. Those admissions are substantial evidence, standing alone, upon which the Board could conclude that Monroe teaches the resilient limitation.

The record also includes deposition testimony of Sosin, the inventor of the eyewear retainer disclosed in Monroe. That testimony is also substantial evidence

that Monroe teaches every aspect of the resilient limitation.  Cablz alleges that

Chums failed to provide any evidence that the 300-pound test monofilament

disclosed in Monroe "return[s] to its original form after being bent." Appellant's

Br. at 19, 23.  This is false.  In his deposition, Sosin testified:

> The monofilament, 300-pound test mono.  People like different things.
> Some people don't care if it hits their neck, others do.  I did.  That's
> why I came up with this to make sure it stayed off my neck.  *And 300-
> pound mono you can't bend it or keep it down there, it will pop right
> back up.*

Appx0987 (emphasis added).  Later, when asked whether the 300-pound test

monofilament maintained its shape in different weather conditions, Sosin stated:

"Oh yeah.  You can't – if you take *300-pound test mono you can bend it and it*

*snaps right back to where it goes*."  Appx1106-Appx1107 (emphasis added).

Thus, Sosin established the resilient nature of 300-pound test monofilament.

Given all of the above, the Board's conclusion that "the test monofilament of

Monroe [is] a resilient cable," *see* Appx0017, was supported by substantial

evidence.  A reasonable mind would accept the Visser declaration, Cablz's own

admissions, and Sosin's deposition testimony as more than adequate to support the

conclusion that the 300-pound test monofilament disclosed in Monroe is

"resilient," as this term was construed by the Board.  To the extent the Board did

not explicitly identify those portions of the record that demonstrate this *inherent*

*resilient property* of Monroe's 300-pound test monofilament, it is because the issue

- 21 -

was not properly before it at the time of its decision.  Thus, the Board was not

required to make specific findings.  As previously discussed, Cablz had already

conceded that the resilient limitation had been met and had failed to timely argue

any alleged deficiency in the record on this point.[9]  In any event, the Board *did*

expressly state that its conclusions were not only based on the Visser declaration,

but on all of the evidence before it, which includes Cablz's own admissions and the

Sosin declaration.  Appx0025 ("[W]e evaluate Mr. Visser's testimony along with

the remainder of the evidence before us to reach our conclusions.").

## B.    Substantial Evidence Supports the Board's Motivation to Combine Finding.

Chums also submitted substantial evidence establishing a motivation to

combine the teachings of the prior art.  To prove motivation to combine, Chums

pointed to two declarations and specific disclosures in the prior art as providing

reasons to combine the prior art references.  Based on this evidence, the Board

correctly found there was a motivation to combine.

In *KSR*, the Supreme Court explained that obviousness cases demand a

flexible approach and that motivation to combine can be shown from a variety of

types of evidence.  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 419, 421 (2007).

This Court has since recognized that indicia of motivation can include: "market

forces; design incentives; the interrelated teachings of multiple patents; any need or

---

[9] *See supra* Section I.A discussing Cablz's waiver of this argument.

problem known in the field of endeavor at the time of invention and addressed by the patent; and the background knowledge, creativity, and common sense of the person of ordinary skill." *Perfect Web*, 587 F.3d at 1329 (internal quotation marks and citation omitted).  Here, Chums submitted two declarations and explained how the prior art and the nature of the problem to be solved provided a motivation to combine the prior art references.

One of the declarations was expert evidence from Visser, an industrial design expert, and the other was from Sterling McMurrin (McMurrin), who participated in development of some of the allegedly infringing products.  The declarations evidence that a POSITA would have been motivated to combine the teachings of Monroe, Mackay, Chisolm, and Miller.  *See Altana Pharma AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999, 1008 (Fed. Cir. 2009) (relying on expert evidence in determining motivation).  Cablz chose not to depose either Visser or McMurrin during the IPR, and thus left this declaration evidence uncontested.  Appx0025-Appx0026.

Cablz is wrong that Chums' expert evidence "contains nothing more than mere conclusory statements" to establish a motivation to combine references.  *See* Appellant's Br. at 25-26.  For example, the Visser declaration, after a lengthy comparison of the teachings of Mackay and Monroe, states "one of ordinary skill in the art would have been motivated to combine the teachings of Mackay's temple

- 23 -

retainers with the monofilament line of Monroe *in order to render the temple retaining device of Monroe more versatile*"—*i.e.*, a consumer could attach the Sosin eyewear retainer to different positions on his or her glasses without having to tie a complicated fishing knot. Appx0488-Appx0490 (emphasis added). The only way the foregoing statement could be conclusory is if it omitted both the detailed analysis that preceded it and the italicized language. Thus, the Board rightly dismissed Cablz's arguments regarding the alleged insufficiencies of the Visser declaration. Appx0025.

Chums also showed that the prior art references themselves provided motivations to combine the teachings of the prior art. As the *KSR* Court recognized, sufficient motivation to combine references may be found where the claimed device amounts to nothing more than a "simple substitution of one known element for another or the mere application of a known technique to a piece of prior art ready for the improvement." 550 U.S. at 409-11, 417. The Court also determined that a motivation to combine the teachings of the prior art is present where a combination is no "more than the predictable use of prior art elements according to their established functions." *Id.* Here, Chums not only identified express suggestions in the prior art that would motivate their combination, but also demonstrated the additional types of motivation described in *KSR*.

1.    **Evidence of Motivation to Combine the Teachings of Monroe and Mackay.**

Chums provided substantial evidence that a POSITA would have been motivated to replace the temple-retention features of Monroe (*i.e.*, the floss tied to the ends of the monofilament) with the temple-retention features of Mackay (*i.e.*, the connectors at the ends of the cord). The resulting modified device thus would be an eyewear retainer formed of the 300-pound test monofilament of Monroe and the temple retainers of Mackay attached at each end. *See* Appx0089-Appx0094.

Chums demonstrated that Monroe and Mackay are in the same field of endeavor and relate to simple mechanical devices. *See* Appx0073-Appx0080; Appx0087; Appx0487. Chums further demonstrated that the proposed modification of Monroe by replacing the floss temple-retention features with the temple retainers of Mackay amounts to (i) a simple substitution of one known element for another, (ii) the mere application of a known technique to a piece of prior art ready for the improvement, or (iii) the predictable use of prior art elements according to their established functions, thus demonstrating motivation to combine the teachings of Mackay with those of Monroe. *See* Appx0075-Appx0080; Appx0087-Appx0094; Appx0487-Appx0492. Illustrative examples include:

- An illustrative prior art reference, Weil, demonstrates that POSITA had been attaching friction-based temple retainers to the ends of temple retainers for well over half of a century. Appx0075-Appx0078; Appx0800-Appx0803.

As a result, replacing the tied dental floss attachment method of Monroe with the temple retainers of Mackay would have been an obvious design choice (*e.g.*, a simple substitution, application of a known technique, or predictable use according to established functions) because, for example, the connectors would allow users to easily attach the eyewear retainers to glasses without having to heat the monofilament and finish with a knot as if "tying a fly" (as disclosed in Monroe).  Appx0087-Appx0088; Appx0412-Appx0416 at 5, ¶¶ 6, 7; Appx0487-Appx0488.

- Mackay teaches attachment techniques that were commonly known to those of ordinary skill in the art at the time of the alleged invention of the '268 patent.  In particular, Mackay states:

> In one . . . embodiment, an adhesive is applied to the ends 14, 16 of cord 12 (or to ends 22, 24 of connectors), after which the ends 14, 16 are mounted within respective ends 22, 24 of connectors 18, 20, thereby coupling cord 12 to connectors 18, 20.  However, a variety of different methods may be employed for coupling a cord to connectors, such as by configuring the connectors to extend integrally from the cord.

Appx0491-Appx0492.

- McMurrin provides evidence, similar to Weil, that confirms those skilled in the art of eyewear retainers commonly attached friction-based temple retainers to the ends of temple retainers and that it was a relatively simple

- 26 -

process. Appx0877-Appx0882. Chums has manufactured eyewear retainers with two elastomeric temple retainers attached to opposite ends of the eyewear retainer since at least as early as 2002. Appx0877-Appx0882 at ¶ 11.

Chums also demonstrated that Mackay and Monroe include express suggestions for their combination. *See* Appx0088-Appx0089; Appx0489-Appx0492.

- A POSITA would have noticed that the monofilament depicted in the photo of Monroe (reproduced below, cropped) is attached to the eyeglasses temple at the same position illustrated in FIG. 2B of Mackay (reproduced below, cropped), and that a simple substitution of the temple retainers of Mackay for the attachment method employed in Monroe would have had various advantages, including allowing the eyewear retainer to "selectively couple to different portions of an eyeglass." Appx0088-Appx0089; Appx0489-Appx0492.



*Photograph from Monroe*          *FIG. 2B of Mackay*
(Appx0412-Appx0416 at 2)    (Appx0417-Appx0427 at 5, cropped)

- 27 -

- "Mackay also provides a clear suggestion from which one of ordinary skill in the art would be prompted to replace Mackay's 'cord' with other suitable materials, such as the monofilament of Monroe, with a reasonable expectation of success. In particular, Mackay states:

  > Cord 12 may comprise a variety of different elongate members that extend between first and second [temple retainers]. For example, cord 12 may comprise a flexible braided line, a wire, a chain, a rope, a string, an elongate elastomeric member, a leather or cloth member, a strand, or a variety of other elongate members comprised of a variety of different materials that can serve as a retainer cord. A variety of additional examples of materials that [sic] can be employed for a cord 12 of the present invention."

Appx0490-Appx0491.

### 2. Evidence of Motivation to Combine the Teachings of Chisolm and Monroe.

Chums provided substantial evidence that a POSITA would have been motivated to replace the filament member of Chisolm with the monofilament of Monroe. The resulting modified device thus would be an eyewear retainer formed of the 300-pound test monofilament of Monroe with the temple retainers of Chisolm attached at each end. *See* Appx0100-Appx0105.

Chums demonstrated that Chisolm and Monroe are in the same field of endeavor and relate to simple mechanical devices. *See* Appx0073-Appx0078; Appx0080-Appx0082; Appx0087; Appx0487. Chums further demonstrated that

- 28 -

the proposed modification of Chisolm, by replacing the filament member with the monofilament of Monroe, amounts to (i) a simple substitution of one known element for another, (ii) the mere application of a known technique to a piece of prior art ready for the improvement, or (iii) the predictable use of prior art elements according to their established functions, thus demonstrating motivation to combine the teachings of Monroe with those of Chisolm. *See* Appx0075-Appx0078; Appx0080-Appx0082; Appx0087-Appx0088; Appx0099-Appx0105; Appx0487-Appx0489; Appx0493-Appx0495. Illustrative examples include:

- Weil, as previously discussed, demonstrates that POSITA had been attaching friction-based temple retainers to the ends of temple retainers for well over half of a century. Appx0075-Appx0078; Appx0800-Appx0803. As a result, applying the temple retainers of Chisolm to the ends of the monofilament of Monroe would have been an obvious design choice (*e.g.*, a simple substitution, application of a known technique, or predictable use according to established functions) because, for example, the gipping members would allow users to easily attach the eyewear retainers to glasses without having to heat the monofilament and finish with a knot as if "tying a fly" (as disclosed in Monroe). Appx0087-Appx0088; Appx0412-Appx0416 at 5, ¶¶ 6, 7; Appx0487-Appx0488.

- "Chisolm teaches attachment techniques that were commonly known to those of ordinary skill in the art during the relevant period. In particular, Chisolm states:

  > Each gripping member 18 has a first end 30 which attaches to the filament member 12 in any suitable manner that secures the gripping member 18 to the filament member 12. . . . [B]y way of example only, the gripping member may be structured with an opening 34 sized to receive the terminal end 36 of the filament member 12. The gripping member 18 may, by way of example only, be fused to the terminal end 36 of the filament member 12."

  Appx0494-Appx0495.

- McMurrin provides evidence that confirms those skilled in the art of eyewear retainers commonly attached friction-based temple retainers to the ends of temple retainers and that it was a relatively simple process. Appx0877-Appx0882. Chums has manufactured eyewear retainers with two elastomeric temple retainers attached to opposite ends of the eyewear retainer since at least as early as 2002. Appx0877-Appx0882 at ¶ 11.

Chums further demonstrated that Chisolm and Monroe include express suggestions for their combination. *See* Appx0099-Appx0100; Appx0493-Appx0494. Illustrative examples include:

- A POSITA would have been prompted to use the monofilament disclosed in Monroe with Chisolm's temple retainers based on Chisolm's suggestion that

the "filament member" to which the temple retainers are attached "may be made of any suitable material, including metals, fabrics, woven or non-woven cord, plastics or elastomers."  Appx0099-Appx0100; Appx0444-Appx0452 at 7, col. 2, ll. 4-6; Appx0494.

- "Chisolm's advantageous teaching of 'a variety of ways that the retainer may be attached to the glasses' would have motivated one of skill in the art to combine the teachings of Chisolm with those of Monroe."  Appx0494.

- Monroe's identification of various benefits of the rearwardly extending monofilament provides an additional motivation to modify Chisolm's devices by using Monroe's resilient monofilament in the place of Chisolm's filament member.  For example, Monroe indicates that the resilient monofilament advantageously "never hangs up and never drapes around his neck," thus avoiding the bothersome condition of Chisolm's filament member falling on a user's neck in the heat.  Appx0100; Appx0412-Appx0416 at 5, ¶¶ 5, 8; Appx0493.

### 3.   Evidence of motivation to combine the teachings of Miller with either of the Monroe/Mackay or Chisolm/Monroe combinations.

Chums provided substantial evidence that a POSITA would have been motivated to replace the monofilament of Monroe in either of the Monroe/Mackay or Chisolm/Monroe modifications with any of a variety of cables disclosed in Miller, including, without limitation, coaxial cable or another metallic cable with a

- 31 -

smooth casing.  The resulting modified device would be an eyewear retainer formed of Miller's cable (in place of Monroe's monofilament) with the temple retainers of Mackay or Chisolm attached at each end.  *See* Appx0094-Appx0099.

Chums demonstrated that Miller is in the same field of endeavor as Monroe, Mackay, and Chisolm.  *See* Appx0079-Appx0082; Appx0083-Appx0087; Appx0313-Appx0316; Appx0482.  Chums further showed that Miller teaches that a variety of materials can be used interchangeably for an elongated element of an eyewear retaining device.  *See* Appx0083-Appx0087; Appx0482-Appx0486.  For example, both the Petition and the Visser declaration point to Miller's teaching that its flexible temple material:

> can be clear monofilament polymer with or without cladding capable of photonic transmission.  The flexible temple material can also be of chain, cloth, woven string, flexible fiber, plastic, composite, wire, optical fiber, electrical conductor, cable, multi-clad cable, coaxial cable, rottable [sic] in the longitudinal axis cable insert, metal, and tubing . . . low modulus flexible wire or any other suitably flexible material.
> Appx0439 at ¶ 11; Appx0440 at ¶ 24.

Based on this and further teachings in Miller, both the Petition and the Visser declaration establish that "Miller expressly teaches that monofilament can be replaced with a variety of cables, such as coaxial cable (commonly known to have a metallic core coated in a smooth casing)."  Appx0086; *see also* Appx0484-Appx0485.

Chums demonstrated that Miller, like Monroe, Mackay, and Chisolm

discussed above, relates to a simple mechanical device.  Appx0087; Appx0487.

Chums further demonstrated that the proposed modification of either of the

Monroe/Mackay or Chisolm/Monroe combinations by replacing the monofilament

of Monroe with Miller's cable amounts to nothing more than a simple substitution

of one known element for another or the predictable use of prior art elements

according to their established functions.  Appx0094; Appx0105; Appx0492-

Appx0493; Appx0495.  For example, the Visser declaration states:

> Miller establishes that it was known in the art of eyewear retaining
> devices to substitute an elongated piece of resilient plastic with a
> flexible metallic cable having a smooth casing. . . .  For example,
> Miller discloses that a "monofilament polymer" or a "monofilament
> fiber" can be replaced with any suitably flexible material, including
> "cable, multi-clad cable, coaxial cable . . . .  I conclude that one of
> ordinary skill in the art would have found it obvious to replace the
> monofilament used in an eyewear retention device resulting from a
> combination of the teachings of Monroe and Mackay with any
> suitable material disclosed in Miller.

Appx0492-Appx0493.

In sum, Chums submitted ample evidence of a motivation to combine

references, and the Board properly concluded that Chums had done so when it

entered its order invalidating the '268 Patent.

- 33 -

**C.    The Board Adequately Explained its Motivation to Combine Findings by Crediting Chums' Arguments and Rejecting Cablz's Arguments.**

The Board sufficiently explained its findings regarding motivations to combine the prior art references.  Indeed, the Board summarized Chums' motivation arguments in a section titled "*Asserted Grounds of Unpatentability under 35 U.S.C. § 103*" and clearly adopted them as its own in concluding that the prior art combinations provide "strong evidence of obviousness of claims 1-17." Appx0032.  Moreover, in a section titled "*Reasons to combine the prior art*," the Board analyzed and rejected Cablz's arguments that there was no motivation to combine the references, instead determining that Chums' "more detailed responses" were more persuasive.  *See* Appx0019-Appx0026.  Further, in a section titled "*Simple Substitution*," the Board analyzed and rejected Cablz's attacks on the basic motivation to combine teachings by simply substituting one known element for another with a reasonable expectation of success.  *See* Appx0025-Appx0026. Indeed, such a significant portion of the Board's decision is dedicated to analyzing the issue of motivation to combine references that Cablz appears to have missed the forest by nitpicking at one or two trees.  For these reasons, this Court should reject Cablz's attack on the Board's explanation of its finding that there was a motivation to combine the prior art references.

While the Board must provide "'a reasoned basis'" for why a POSITA would combine the prior art references, this Court recently confirmed that it "'will

- 34 -

uphold a decision of less than ideal clarity if the [Board's] path may reasonably be discerned.'" *Nuvasive*, 2016 WL 7118526, at *5[10] (quoting *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285, 286 (1974)).  For example, in *Perfect Web* this Court held that the district court adequately explained motivation where it observed that "common sense dictates[]" adding another simple step to a bulk email transmission method to ensure delivery.  587 F.3d at 1330.  There, the prior art disclosed a method for solving the problem of sending mass email marketing to every intended recipient, and the subject invention added one more step to previous methods.  *Id.*  This extra step essentially repeated all previous steps until the desired number of emails were sent.  *Id.* This Court upheld the district court's explanation that one skilled in the art would have been motivated to continue repeating the same process until receiving the desired results because "[o]ne could do little else" but try again.  *Id.*

Here, the Board provided a reasonably discernible basis for why a POSITA would combine the teachings of the prior art references in view of its analysis and conclusions.  The following sections identify the Board's reasoning with respect to

---

[10] This case is distinguishable from this Court's very recent decision in *Nuvasive. The Nuvasive* Court found the Board's motivation explanation inadequate, in part, because the evidence presented by the petitioner was simply a conclusory statement that a POSITA would have been motivated to combine the prior art references to obtain additional information.  *Nuvasive*, 2016 WL 7118526, at *6. Here, by contrast, there is ample record evidence of motivation to combine and the Board spent significant time analyzing the arguments in support of and against its finding that there was a motivation to combine the prior art references.

the motivations for each separate combination of the references that led to the Board's ultimate conclusion that Chums presented "strong evidence of obviousness of claims 1-17." Appx0032.

### 1. Basis for Motivation to Combine the Teachings of Monroe and Mackay.

As detailed in Section II.A, *supra*, Chums provided substantial evidence that a POSITA would have been motivated to replace the temple-retention features of Monroe with the temple retainers of Mackay, with the resulting modified device being an eyewear retainer formed of Monroe's 300-pound test monofilament with Mackay's temple retainers attached at each end. The Board summarized this evidence in its decision as follows:

> Petitioner challenges claims 1, 3–9, and 11–17 as unpatentable over Monroe and Mackay under 35 U.S.C. § 103(a). Pet. 35–41. Petitioner presents a claim chart identifying where the individual features of the challenged claims are alleged to be found in Monroe and Mackay. *Id.* at 37-41. Petitioner asserts that Monroe teaches all the elements of claim 1, with the exception of the two temple retainers, for which Petitioner relies on Mackay. *Id.* at 37. For independent claim 9, which differs from claim 1 only in that the term "resilient member" replaces "resilient cable," Petitioner relies largely on its arguments for claim 1. *Id.* at 39. Petitioner argues that one of skill in the art would have "immediately recognized that a *simple substitution* of the eyewear retainers of Mackay for the attachment method employed in Monroe would have had various advantages. *Id.* at 36 (citing Ex. 1007, 30-35)."

89938017.6 0052018-00009

Appx0013 (emphasis added).  Here, the Board cited to both Chums' Petition (*i.e.*, Pet. 35-41, which corresponds to Appx0088-Appx0094) and the declaration of Visser (*i.e.*, Ex. 1007, 30-35, which corresponds to Appx0487-Appx0492).  With respect to motivation to combine the teachings of Mackay with those of Monroe, the Board focused on Chums' arguments that such motivation lies in the fact that the proposed modification amounts to nothing more than a simple substitution of one known element for another, and further, that the prior art itself includes express suggestions that would lead a POSITA to make the modification to achieve the "various advantages" detailed in the Visser declaration.  *See* Appx0487-Appx0492.

Moreover, in a section titled "*Reasons to combine the prior art*," the Board provided detailed analysis rejecting each of Cablz's attempts to argue that there was no motivation to combine the teachings of Monroe and Mackay.  Appx0019-Appx0025.  In rejecting Cablz's arguments that Monroe and Mackay teach away from combining their teachings (*i.e.*, the arguments numbered 1, 2, 3, 4, and 5 at Appx0019), the Board stated:  "[w]e are persuaded, rather, by Petitioner's more detailed responses explaining why the prior art references do not 'teach away' in the manner alleged by Patent Owner.  *See* Reply 7-11."  Appx0019-Appx0020.

Similarly, rejecting Cablz's argument that highly skilled artisans had not solved the "being in the way problem," the Board stated that "[w]e are persuaded

that Mr. Sosin's device, disclosed in the Monroe reference, solved the 'being in the way' problem. . . Thus, we are not persuaded that the 'being in the way' problem had not been solved prior to Patent Owner's invention."  Appx0021-Appx0022. The Board also rejected Cablz's argument that those of ordinary skill in the art had not recognized the "being in the way" problem, instead agreeing with Chums that "Mr. Sosin recognized and solved the problem at issue."  Appx0022.

The Board further rejected Cablz's argument that Chums' own failure to combine the teachings of the prior art references was strong evidence that there was no motivation to combine the references.  Appx0023.  The Board concluded that "Petitioner's late entry into that market is not necessarily evidence that Petitioner had been trying and failing to make such a retainer.  Unlike the case cited, Petitioner had not tried and failed repeatedly to make such a product, or expended millions doing so.  Thus, we do not view Petitioner's later entry into the market as evidence that there was no reason to combine the references before us."  Appx0023.

In rejecting Cablz's argument that the age of the cited references shows lack of a reason to combine, the Board credited Petitioner's argument that "the alleged invention is simply a combination of prior art elements, and the prior art not only recognized the problem—it also solved the problem" and stated further that "a temporal gap between Monroe and the priority date of the '268 Patent does not

mean that a skilled artisan would not have been aware of, and appreciated, the teachings of Monroe." Appx0024.

Finally, the Board rejected Cablz's contention that "the Visser Declaration is insufficient and vague to support a conclusion of obviousness." Appx0024-Appx0025. In particular, the Board disagreed with Cablz's "tak[ing] issue with Mr. Visser's statements that the invention is 'simple' and that only 'simple substitution' is required." Appx0024. The Board confirmed that in reaching its decision on obviousness, it had "evaluate[d] Mr. Visser's testimony along with the remainder of the evidence before [it]." Appx0024-Appx0025.

Further, in a section titled "*Simple Substitution*," the Board provided detailed analysis rejecting Cablz's contentions that there was no motivation to combine the teachings of Monroe and Mackay because this combination was not, in fact, a simple substitution. Appx0025-Appx0026. The Board was persuaded by Chums' "evidence that its product was achieved with minimal experimentation and as a matter of simple substitution." Appx0026. The Board noted that Cablz's "arguments and evidence that the steps that would need to be taken to achieve the 'off the neck' position would be very complicated is [sic] contradictory to Petitioner's arguments and evidence," and then sided with the latter evidence. Appx0026. The Board also noted that Cablz failed to question Chums' declarant, McMurrin, "regarding his assertions in his declaration that the substitution was one

- 39 -

reasonably characterized as simple." Appx0026. Thus, looking at the "*Simple Substitution*" section as a whole, it is clear that the Board concluded that the combination of the teachings of Monroe and Mackay is nothing more than a simple substitution of one known element for another, and this conclusion details a motivation to combine the teachings of these references.

### 2. Basis for Motivation to Combine the Teachings of Chisolm and Monroe.

As detailed in Section II.B, *supra*, Chums provided substantial evidence that a POSITA would have been motivated to replace the filament member of Chisolm with the monofilament of Monroe, with the resulting modified device being an eyewear retainer formed of Monroe's 300-pound test monofilament with Chisolm's temple retainers attached at each end. The Board summarized this evidence in its decision as follows:

> Petitioner challenges claims 1, 3–9, and 11–17 as unpatentable over Chisolm and Monroe under 35 U.S.C. § 103(a). Pet. 46–52. Petitioner asserts that Chisolm discloses two temple retainers attached to a "filament member." *Id.* at 27–28 (citing Ex. 1005, Abstract). Petitioner further asserts that Chisolm discloses an eyewear retention device comprising two temple retainers, and relies on Monroe to disclose the remaining elements of claim 1. Pet. 48. For independent claim 9, which differs from claim 1 only in that the term "resilient member" replaces "resilient cable," Petitioner relies largely on its arguments for claim 1. *Id.* at 50–51. According to Petitioner, Figures 6, 8–10, and 12 of Chisolm illustrate the temple retainers of Chisolm and some of the possible manners in which they can be positioned. *Id.* at 28–29. Petitioner further argues that one of ordinary skill in the art would have found it obvious to combine the teachings of Chisolm with those of Monroe, and specifically "would have been prompted to

consider using the piece of monofilament disclosed in Monroe with Chisolm's devices based on Chisolm's suggestion that the 'filament material . . . may be made of any suitable material, including metals, fabrics, woven or non-woven cord, plastics or elastomers.'" Pet. 47 (citing Ex. 1007, 30-32, 36-38).

Appx0014-Appx0015.  Here, the Board cites to both Chums' Petition (*i.e.*, Pet. 46-52, which corresponds to Appx0099-Appx0105) and the declaration of Visser (*i.e.*, Ex. 1007, 30-32, 36-38, which corresponds to Appx0487-Appx0489; Appx0493-Appx0495).  With respect to motivation to combine the teachings of Monroe with those of Chisolm, the Board focuses on Chums' arguments, as detailed in Section II.B, *supra*, that Chisolm includes an express suggestion that its "'filament material . . . may be made of any suitable material, including metals, fabrics, woven or non-woven cord, plastics or elastomers,'" as detailed in the Visser declaration.  *See* Appx0487-Appx0489; Appx0493-Appx0495.  The Board adopted this argument as its own by concluding that Chums had provided "strong evidence of obviousness." Appx0032.

Moreover, in the section titled "*Reasons to combine the prior art*," the Board provided detailed analysis rejecting each of Cablz's attempts to argue that there was no motivation to combine the teachings of Monroe and Chisolm.  Appx0019-Appx0025.  In rejecting Cablz's arguments that each of Monroe and Chisolm teach away from combining their teachings (*i.e.*, the arguments numbered 1, 2, and 4 at Appx0019), the Board stated:  "We are persuaded, rather, by Petitioner's more

- 41 -

detailed responses explaining why the prior art references do not 'teach away' in the manner alleged by Patent Owner. *See* Reply 7-11." Appx0019-Appx0020. The Board's further analysis in the "*Reasons to combine the prior art*" section, discussed in Section III.A, *supra*, is equally applicable here.

### 3.    Basis for Motivation to Combine the Teachings of Miller with Either of the Monroe/Mackay or Chisolm/Monroe Combinations.

As detailed in Section II.C, *supra*, Chums provided substantial evidence that a POSITA would have been motivated to replace the monofilament of Monroe in either of the Monroe/Mackay or Chisolm/Monroe modifications above with any of a variety of cables disclosed in Miller, including, without limitation, coaxial cable or another metallic cable with a smooth casing. The resulting modified device would be an eyewear retainer formed of Miller's cable (in place of Monroe's monofilament) with the temple retainers of Mackay or Chisolm attached at each end. The Board summarized this evidence in its decision as follows:

> [W]e are persuaded by Petitioner's claim charts and arguments that Miller discloses materials including a cable/member made from a metallic cord coated in a smooth casing. . . For example, we are persuaded that Miller teaches a cable/member made from a metallic core coated in a smooth casing because *it specifically discusses that, in the field of eyewear, it was well known to use a variety of materials, including, for example, coaxial cable, to encircle a wearer's head.*

Appx0017 (emphasis added).

Petitioner challenges claims 1–17 as unpatentable over Monroe, Mackay, and Miller under 35 U.S.C. § 103(a). Pet. 41–46. Petitioner's claim chart, for the most part, refers to the claim chart for the Monroe

and Mackay ground, *supra*, with the exception of elements in claims 1, 2, 9, and 10. *Id.* at 42–46. In its claim chart concerning the ground based on Monroe, Mackay, and Miller, Petitioner relies on Miller to teach the "resilient cable" and "resilient member" of claims 1 and 9, respectively, and the "made from a metallic core coated in a smooth casing" limitation of claims 2 and 10. *Id.* at 42–45. Petitioner argues that "*Miller establishes that it was known in the art of eyewear retaining devices to substitute an elongated piece of resilient plastic with a flexible metallic cable having a smooth casing*" and that "*such a direct substitution of known parts would have been obvious to one of ordinary skill in the art.*" *Id.* at 41 (citing Ex. 1007, 30–32, 35–36).

Appx0013-Appx0014 (emphasis added).

Petitioner challenges claims 1–17 as unpatentable over Chisolm, Monroe, and Miller under 35 U.S.C. § 103(a). Pet. 52–53. For support, Petitioner refers to its claim charts and arguments in Sections VI.C, VI.D.2, and VI.D.3 of the Petition. *Id.* Petitioner argues that it would have been obvious *to simply substitute any of the materials disclosed or suggested in Miller for the monofilament of Monroe. Id.* at 52 (citing Ex. 1007, 30–32, 38).

Appx0015 (emphasis added).

The Board cites to both Chums' Petition (*i.e.*, Pet. 41-46, 52-53, which corresponds to Appx0094-Appx0099; Appx0105-Appx0106) and the declaration of Visser (*i.e.*, Ex. 1007, 30-32, 35-36, 38, which corresponds to Appx0487-Appx0489; Appx0492-Appx0493; Appx0495). With respect to motivation to combine the teachings of Miller with either of the Monroe/Mackay and Chisolm/Monroe combinations, the Board focuses on Chums' arguments, as detailed in Section II.C, *supra*, that such motivation lies in the fact that the proposed modification amounts to nothing more than a simple substitution of one

known element for another.  The Board adopted these arguments in concluding that Chums had provided "strong evidence of obviousness."  Appx0032.

Moreover, in the section titled "*Reasons to combine the prior art*," the Board provided detailed analysis rejecting Cablz's attempts to argue that there was no motivation to combine the teachings of Miller with either of the Monroe/Mackay or Chisolm/Monroe combinations.  Appx0019-Appx0025.  In rejecting Cablz's argument that Miller teaches away from combining its teachings with those of Monroe (*i.e.*, the argument numbered 6 at Appx0019), the Board stated:  "We are persuaded, rather, by Petitioner's more detailed responses explaining why the prior art references do not 'teach away' in the manner alleged by Patent Owner.  *See* Reply 7-11."  Appx0019-Appx0020.  Much of the Board's further analysis in the "*Reasons to combine the prior art*" section, discussed in Section III.A, *supra*, is equally applicable here.

In sum, the Board's path for establishing motivations to combine the teachings of the prior art is readily discernable.   Accordingly, this Court should reject Cablz's arguments that the Board failed to explain adequately its rationale for finding a motivation to combine.

# VII.  CONCLUSION

Because the Board correctly held that Cablz's simple, off-the-neck eyewear retainer described in the '268 Patent was obvious at the time it was patented, this Court should affirm the Board's decision and hold the '268 Patent invalid.

DATED:  December 14, 2016                    Respectfully submitted,

                                             /s/ Marc T. Rasich

                                             Marc T. Rasich
                                             Joshua G. Gigger
                                             Daniel C. Higgs
                                             STOEL RIVES LLP
                                             201 South Main Street
                                             Suite 1100
                                             Salt Lake City, UT 84111
                                             (O) 801-328-3131
                                             Marc.Rasich@stoel.com
                                             Josh.Gigger@stoel.com
                                             Dan.Higgs@stoel.com

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [ X ] this brief contains 10,163 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.

89938017.6 0052018-00009

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this 14th day of December, 2016, I caused this Brief

of Appellee to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

    Michael J. Douglas
    Joe L. Leak
    H. Spence Morano
    LEAK, DOUGLAS &MORANO, PC
    17 20th Street North, Suite 200
    Birmingham, Alabama 35203
    (205) 977-7099 (Telephone)
    (205) 977-7167 (Facsimile)
    mdouglas@leakdouglas.com
    jleak@leakdouglas.com
    smorano@leakdouglas.com

Upon acceptance by the Clerk of the Court of the electronically filed

document, the required number of copies of the Brief of Appellant will be mailed

to the Office of the Clerk, United States Court of Appeals for the Federal Circuit in

accordance with the Federal Circuit Rules.

    Respectfully submitted,

    /s/ Marc T. Rasich
    Marc T. Rasich
    STOEL RIVES LLP

89938017.6 0052018-00009